*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IC, Minor, by Next Friend MELISSA CARLSON, DP, Minor, by Next Friend ERIC PHARES, MB, Minor, by Next Friend CASSIE GUESS, and KW, Minor, by Next Friend BROOKE WARD,

UNPUBLISHED
May 11, 2023

Plaintiffs-Appellants,

v

No. 361425
Kalamazoo Circuit Court
LC No. 2022-000077-CZ

COMSTOCK PUBLIC SCHOOLS, SARALYN BROWN, PAMELA DICKINSON, KAREN HOWES, PAUL LAMPHEAR, KAYLEEN O'DONNELL, DORINA SCHOLLY, MATTHEW SCHREINER, and JEFF THOENES,

Defendants-Appellees.

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

This appeal involves a challenge by parents, as next friends of their children attending Comstock Public Schools, to a mask requirement implemented by the school district to prevent the spread of COVID-19 that was in effect until February 28, 2022. Given the elimination of the masking requirement, the trial court dismissed the case as moot. Plaintiffs appeal as of right. For the reasons set forth below, we affirm.

## I. BACKGROUND

Plaintiffs challenge the validity of a policy, adopted by the school district during the COVID-19 pandemic, that required students to wear masks at school. The school district adopted the policy in August 2021, in keeping with then-current guidance from the Center for Disease Control and Prevention (CDC) and the Department of Health and Human Services (DHHS), and in compliance with orders from the Kalamazoo County Health Department that required masks in schools. The County Health Department rescinded masking requirements in December 2021 but substituted a masking advisory. Based on the advisory, the school district continued to require

-1-

masks. On February 16, 2022, DHHS withdrew the masking advisory that all person wear face masks while indoors; it no longer recommended masking in schools. The same day, the County Health Department issued updated guidance in accordance with DHHS. Nine days later, on February 25, 2022, the school district withdrew its masking requirement, making masks optional for students, staff, and visitors as of February 28, 2022.

Between DHHS rescinding the masking advisory and the school district withdrawing its masking requirement, plaintiffs filed suit on February 23, 2022, challenging the school district's authority to mandate masks in schools. On the same day, a substitute circuit court judge granted plaintiff's ex parte request for a temporary restraining order (TRO). The school district filed an emergency motion to set aside the TRO or, in the alternative, for reconsideration of the temporary order. On February 25, 2022, Judge Lipsey, the circuit court judge assigned to the case, entered an order granting the district's motion and terminating the TRO. On May 3, 2022, the trial court entered an order granting summary disposition to the school district on the basis of mootness.

## II. ANALYSIS

Plaintiffs raise three arguments on appeal. First, that Judge Lipsey lacked the authority to terminate the TRO. Second, that this case is not moot under the "voluntary cessation doctrine." Third, that the school district's adoption of the masking requirement was unlawful. Because of our conclusions as to the first two issues, we do not reach the third.

## A. TERMINATION OF THE TRO

Plaintiffs assert that Judge Lipsey lacked the authority to terminate the TRO, arguing that only the "issuing judge" had the authority to do so. We disagree.

This case was assigned to Judge Lipsey in the normal order of business. On the day the plaintiffs' complaint was filed however, Judge Lipsey was unavailable and in accordance with normal procedure a different judge substituted for him in making the initial ruling, but the case was not transferred.[1] Plaintiffs rely on MCR 3.310(G)(1) to claim that only the judge that granted the TRO may order its cessation. However, the rule does not so provide. It states that "[i]f a circuit judge has *denied* an application for an injunction or temporary restraining order . . . later application for the same purpose and in relation to the same matter may not be made to another circuit judge." MCR 3.310(G)(1) (emphasis added). The purpose of the rule is evident—to prevent a party from going from judge to judge in hopes of finding one that will grant the sought injunction. However, by its language, the rule does not apply to cases in which an injunctive order has been *granted*. Moreover, in moving to have the TRO terminated the school district was not judge-shopping. It was simply filing the motion to the judge who had been assigned the case and who in the normal course would have heard the initial request and ultimately would hear any request for a temporary or permanent injunction.

We also note that the initial issuance of the TRO lacked any basis. The ex parte request for a TRO violated multiple provisions of MCR 3.310(B). To obtain such an order the party seeking it must submit an affidavit or verified complaint stating "that immediate and irreparable

---

[1] Indeed, Judge Lipsey was listed in the caption as the judge assigned to the case.

injury, loss, or damage will result to the applicant from the delay required to effect notice" and a certification in writing setting forth what efforts were made to serve the defendant and the reasons why action must be taken without notice. MCR 3.310(B)(1)(a)-(b). But plaintiffs failed to file an affidavit or verified complaint. And plaintiffs' unverified complaint did not contain any assertion, let alone factual basis, that there was a danger of "immediate and irreparable injury" nor any information as to why the request needed to be heard ex parte. We find plaintiffs' argument based on MCR 3.310(B) to be wholly without merit.

## B. MOOTNESS AND THE VOLUNTARY CESSATION DOCTRINE

Plaintiffs next argue that the trial court erred in dismissing the case as moot. Again, we disagree.

Issues related to mootness pose questions of law, which we review de novo. *Equity Funding, Inc v Village of Milford*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357062); slip op at 3.

> This Court's duty is to consider and decide actual cases and controversies. Generally, this Court does not address moot questions or declare legal principles that have no practical effect in a case. Mootness occurs when an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy. [*Flynn v Ottawa Co Dep't of Pub Health*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359774); slip op at 5 (quotation marks and citation omitted).]

It is clear that with the withdrawal of the masking requirement, "it is impossible for the court to grant relief," i.e., there is no present conduct that the plaintiffs seek to enjoin.

Mootness, however, is not an inflexible doctrine, and there are several exceptions to the general rule. *Turunen v Dir of Dep't of Nat'l Resources*, 336 Mich App 468, 480; 971 NW2d 20 (2021). For example, a moot issue will nevertheless be reviewed if the issue is one of public significance that is "likely to recur in the future and yet evade judicial review." *Flynn*, ___ Mich App at ___; slip op at 4. The trial court concluded that this general exception did not apply in this case, and plaintiffs have not challenged that conclusion on appeal.

Instead, plaintiffs argue more specifically that this case should not be considered moot in light of an exception in federal law to mootness known as the "voluntary cessation doctrine,"[2] which provides:

---

[2] The school district contends that issues relating to the voluntary cessation doctrine have not been preserved for our review because plaintiffs failed to raise this issue in the trial court. However, the school district raised the mootness question in the trial court, and in doing so, the school district argued that the voluntary cessation doctrine did not apply to this case. Preservation requirements function to ensure that issues are not raised for the first time on appeal. See *Glasker-Davis v*

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." [*Ed Subscription Serv, Inc v Am Ed Servs, Inc*, 115 Mich App 413, 430; 320 NW2d 684 (1982) (alteration in original), quoting *United States v WT Grant Co*, 345 US 629, 632; 73 S Ct 894; 97 L Ed 1303 (1953).]

Plaintiffs argue that we should adopt and apply the voluntary cessation doctrine here because the district's withdrawal of the policy occurred shortly after their lawsuit was filed and after an initial, albeit later vacated, order granting a TRO halting enforcement of the policy.

We agree that the school district voluntarily terminated the masking policy. However, the inquiry does not end there. Two other requirements must be met. First, in order to apply the doctrine, the cessation must have resulted from the district's attempt to moot this case rather than for some good faith reason. Second, the ability to resume the challenged conduct must be present and not speculative at the time of the suit.

As indicated above, the school district adopted the policy in question during August 2021, in keeping with then-current guidance from the CDC and DHHS, and in compliance with orders from the Kalamazoo County Health Department that required masks in schools. The County Health Department rescinded masking requirements in December 2021 but substituted a masking advisory to school districts to require masks. On February 16, 2022, DHHS withdrew the masking advisory that all persons wear face masks while indoors, no longer recommended masking in schools and on the same day, the County Health Department issued updated guidance in accordance with DHHS. Nine days later, on February 25, 2022, the school district withdrew its masking requirement, making masks optional for students, staff, and visitors as of February 28, 2022.

In the instant case, there is no evidence that since February 28, 2022, this school district has imposed or expressed an intent to reimpose the mask mandate. The district points out that its decision to withdraw the mask mandate occurred within days of DHHS issuing new guidance on masks, lifting the recommendation for indoor masking in public settings, including schools, on which it had relied in formulating its policy. In lifting this recommendation, DHHS cited "[c]urrent case rates and hospitalizations, and increased access to vaccines, testing and therapies" as evidence that Michigan was in a "post-surge recovery phase" in which no "immediate resurgence" was predicted. On February 25, 2022, consistent with DHHS's updated guidance, the school district lifted its masking requirement effective February 28, 2022. Although it is true that plaintiffs filed suit on February 23, 2022—in the brief window between DHHS's updated guidance and the school district's revocation of its masking requirement—the fact remains that the school district's decision followed immediately on the heels of DHHS's guidance, supporting the

---

*Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). Accordingly, we conclude that this issue was preserved for our review.

conclusion that the school district acted in response to DHHS's guidance and the current COVID-19 situation and *not* in response to plaintiffs' lawsuit. Cf. *Resurrection Sch v Hertel*, 35 F4th 524, 529 (CA 6, 2022).[3] Indeed, there is a presumption of good faith by government actors, see *Brach v Newsom*, 38 F4th 6, 12-14 (CA 9, 2022), and the facts of this case do not rebut that presumption.[4]

Plaintiffs have also failed to demonstrate that this issue is likely to recur in the near future or likely to evade review if it did. Although we are aware that there is a possibility a school mask mandate could be issued in the future, we nevertheless conclude that the likelihood of this is speculative.

A new pandemic may arise in the future but when and under what circumstances are far too speculative to now render a decision as a matter of law.[5] The mask mandate was eliminated as of February 28, 2022. Despite the termination of the TRO, the district has not sought to reimpose it. The severity of the COVID-19 epidemic is now far reduced, the federal government has ended the health emergency and no new restrictions have been imposed by either the state or local health departments.[6]

Moreover, given the controversy concerning school masking and the number of lawsuits filed, we have little doubt that any attempt to reimpose such requirements will be met with immediate legal action rather than the filing delay of over five months that passed between the adoption of the requirement and the legal challenge in this case.

---

[3] Although nonbinding, decisions of lower federal courts may be considered for their persuasive value. *In re Estate of Vansach*, 324 Mich App 371, 388 n 8; 922 NW2d 136 (2018).

[4] Plaintiffs also cites *T & V Assoc, Inc v Hertel*, unpublished opinion of the Court of Claims, issued May 25, 2022 (Case No. 21-000075-MM). Putting aside the fact that this is a decision of a lower court that has not yet been reviewed, we find that case distinguishable. In that case, the defendant argued that the suit was moot because the plaintiff's business had ceased to operate. However, as noted by that court, the fact that the plaintiff had ceased operations did not mean it could not undertake litigation "particularly . . . where plaintiff contends that it was defendant's actions . . . that allegedly forced it to close its doors in the first instance." *Id*. at 4-5.

[5] Plaintiffs' substantive argument is that the school board lacked authority to impose a mask mandate under MCL 380.11a(3)(b)'s requirement that the district take action to provide for the "safety and welfare" of its students. We conclude that such a determination would best be made at a time when the circumstances giving rise to such a mandate are present, rather than the circumstances that existed one or two years ago.

[6] The masking requirement was imposed in August 2021. Since that time,

> our knowledge of the virus and its vectors of transmission, the rollout of vaccines, and the availability of therapeutic responses to infection have totally changed the nature of the disease itself, our understanding of it, and our response to it. The accumulation of those changed circumstances thus make the return of the same pandemic and the same restrictions unlikely. [*Clark v Governor of New Jersey,* 53 F4th 769, 778 (CA 3, 2022).]

The controversy is moot, and the trial court properly dismissed the case.

Affirmed.

/s/ Douglas B. Shapiro
/s/ James Robert Redford
/s/ Christopher P. Yates